Next case is Dinosaur Building Products vs. Taps. Bibcode is 061536 We have three issues before us right now. One, whether or not the court in Ohio can dictate that we dismiss the case against a defendant over which the court has no jurisdiction. Would you rather say order rather than dictate? Okay, order. He compelled us, I guess is the best way to do it. Although, when all was said and done, he compelled us without prejudice to refiling it and subject to this appeal. The second is whether or not there's any basis for the sanction that was awarded. And thirdly, whether or not there's any basis in the record for the amount of the attorney's fees and the recompense. There's nothing in the record that's presented to the court as to the amount of the attorney's fees because there was nothing in the record in the district court. But dinosaur plastics is the focal point of this first issue. And dinosaur plastics was never a party to the Ohio case, never asked for any relief in the Ohio case, was not a party to the settlement agreement or the release. Acquired relief even though Judge Wynn in the Ohio case did not even know about plastic when the court issued his order on December 6th. His December 6th order is curious in that the December 6th order specifically defines what he means when he says dinosaur. It specifically defines that dinosaur is dinosaur building products limited. Why is that? Because dinosaur building products limited is the only party before him in the case. So when you read the order of opinion, he actually does it again in his July 11th opinion, but I think he may have been inadvertent the second time or maybe it was intentional. But didn't TAPCO continue its activity in Michigan after the order, at least with respect to dinosaur building products? No. As to dinosaur building products, there was nothing done after the date of the order other than communications relative to settlement. And we had settlement communications going on throughout October and November. This order came out of the blue. It shocked me that there was no advance warning, nothing. We got it two days after the mail. I would think that it shocked them because it just came out of the blue. There was no hearing on it. There was nothing. Which order are you speaking of? The December 6th 2005 order. The motion was filed in March. Our response was filed I think around the first week of April. So you were aware of the proceedings before the judge on the discussion of the settlement? That's correct. But we were in the midst of Markman briefing at the time. In the Detroit case, we had proceeded in the Detroit case for I think it was eight or nine months. The Detroit case had been bifurcated with respect to the Markman discovery. But you filed the Detroit case against dinosaur building products. We filed against dinosaur building products and then added dinosaur plastic. Subsequently. Right. When you filed it in Detroit, in Michigan, why don't you just go back to the Ohio court saying that they're in violation of the settlement agreement? Because the case that we filed in Detroit had nothing to do with the case in Ohio. The case in Ohio involved a patent on what's called a mini-mount trim product and it also involved some trade dress and we patched that out to a certain point. No, I understand that. I'm a new kid on the block so allow me to go into it in forbearance to what the situation was as to why you filed it in Michigan. Well, when we settled the case in Ohio, we settled it in two parts. We resolved the patent infringement case on this other patent, other product that has nothing to do with the current Detroit case. And then we settled the balance of it on the trade dress. But there was a settlement in both parts in Ohio. The June 1 settlement plus the September 17 settlement. Right. And we settled them consecutively and then something must have gone wrong at the end where when they were consolidated, and I don't dispute that this court has found that there was a release, a general release up to the date of the settlement agreement. And to this day we don't know whether or not Dynasol actually created this product before the date of the settlement that the court's opinion. Which product? The custom-made product? The custom-made product, yeah. I mean there's some allegations but we've never had discovery on it. We've never had a ruling on it as to the court's opinion, you know, stop there. I presume the release was negotiated by both parties. Well, it was a release on the patent infringement. But it was negotiated by both parties, was it? It was negotiated by both parties and something happened during the last scrubbing of it that some words were omitted, some were, you know, maybe it wasn't as carefully drafted as Judge Linden indicated in the last hearing. It was poorly drafted at the end and it had to do with the homologation of the two settlement agreements and the interpretation is what the interpretation is. But that wasn't our interpretation at the time we filed the March hearing and the Detroit case in, I think it was filed in January and they didn't bring it up until March and they brought it up in Ohio and they also brought it up in the Detroit case in response to the, you know, as an affirmative defense. After the December order by the Ohio court, did you drop dinosaur building products in the Michigan case? We tried and that's, you know, in our objections there's several details as to the efforts that we made. We had communications with Detroit counsel, Mr. Rothenberger is one of the Ohio counsel, we were trying to broker a settlement, we had settlement negotiations up to... Not settlement, I said after the order was issued by the Ohio court, did you drop dinosaur building products from the Michigan case? We did not file anything formally to drop them because there was nothing going on against dinosaur building products. All the activities were against dinosaur plastic up to that point in time because we told counsel that we weren't pursuing dinosaur building products because of the order. They came back and said they wanted a dismissal with prejudice of dinosaur building products which would have killed the appeal. We said we were willing to... Killed which appeal? The appeal that ultimately resulted in a prior decision. Why would that have been killed? Because that's the way that they asked, that's the only way they would resolve it. But that was a Michigan case, not the Ohio case. That's correct. Did you make any effort in Michigan after the December 6th order to file a motion to stay proceedings in light of that order? Twice. First we tried to resolve it among ourselves and ultimately the Michigan case was stayed twice. It was stayed subject to a resolution of whether or not the release applied to dinosaur plastic and that was motions directed to that issue. The judge recognized that issue. That issue came up because... That has to do with the release. In response to the December 6th order in Ohio, did you then take any effort to simply stay proceedings in Michigan? We did in January and later on when we talked to the judge where she was thinking about transferring the whole thing to Ohio, she stayed the whole thing. You're making my question more complicated than it needs to be. Did you file a motion to stay in Michigan? We never formally filed a paper that said motion to stay. That's what I'm asking. Why not? First of all, the month of December we were trying to settle this case and resolve exactly how we were going to dismiss dinosaur plastic. You're faced with an order and you're risking irritating if not more seriously offending the court in Ohio by continuing and nonetheless you have obligations in Michigan because there are proceedings that are ongoing. So instead of filing a motion to stay, you responded to the Markman briefs and as I understand it, you responded after December 6th in Michigan to the briefs filed both by Dinosaur Building Products and by Dinosaur Plastics on a Markman claim construction. There was one brief and we filed in response to Dinosaur Plastics and with a footnote saying we were confused as to why they were filing their brief in response to as only Dinosaur Building Products. Did your response in that matter make clear that you were only responding to Dinosaur Plastics? I thought it did. Apparently there were some inadvertent references but I thought it was clear and in our communications, at least my communications with the Detroit Council, that was the basis that I had intended to respond. Do you want to stay the remainder of your rebuttal time? I just wanted to get to the point of the stay though. We did respond to, they made a motion in front of the judge for dismissal. We responded with a motion to stay. So it wasn't immediate but once we did get before the Detroit court, the first time, the first opportunity we did get before the Detroit court, we filed a motion to stay and our stay was, we wanted to stay the case until the appeal was resolved and everything was resolved. She instead only stayed the case until the summary judgment motion was resolved and then later on stayed the case until everything was resolved. But my point is that the December 6th order is very specific to Dinosaur Building Products only. We were sanctioned for going after Dinosaur Plastics. We were not sanctioned for going after Dinosaur Building Products. We were sanctioned for maybe not dismissing formally but that was only a subset of the basis that was stated by the magistrate judge and adopted by the district court. And there's no evidence in the record as to why any pursuit of Dinosaur Plastics was sanctionable much less was subject to the order. But you continued to name Dinosaur in the papers of Michigan for seven months after the order had been issued. Not Dinosaur Plastics, Dinosaur itself. And the party of record that responded to all of your TAPCO's filings was Dinosaur. In the heading. Well it wasn't an afterthought as much as it was a matter of we finally got a deposition of Dinosaur Building Products. And they took the position that they were separate companies. They had arm's length negotiation. Dinosaur Plastics was the manufacturer of Dinosaur Building Products. They didn't have common ownership. They took this position in August and that was why we had to add Dinosaur Plastics. But you continued to act against Dinosaur itself. Dinosaur Building Products the entire time for seven months after the order was issued by the court in Ohio. We didn't pursue one activity against Dinosaur Building Products. The only thing that was at issue was that we wanted the dismissal to be subject to the appeal. Without prejudice subject to the appeal. They wanted the dismissal to be absolute and if we had to re-enter this domain we would have to go under Rule 60. And that was the entire discussion. There was nothing done against Dinosaur Building Products after the date of the order. But on 7-2706 you did dismiss the action without prejudice. That's correct. The judge agreed with us basically. But you dismissed it without prejudice at that point which you could have done right along. No because we couldn't do that without their agreement. They had to agree to that. We didn't have a unilateral right to do that. Did they agree with you at that point? At that point the judge ordered it. So he went our way basically. They did not agree to it. Mr. Sadowski we'll give you two minutes back. Good morning guys. The question about whether there was a pursuit of action afterwards is fundamental to focus upon February. Whether they filed a Markman brief or not, we were forced to file a summary disposition brief that tried to kick out Dinosaur Plastics and Dinosaur Building Products. They objected to the efforts on Dinosaur Building Products to try and kick itself out. So whether the Markman brief was addressed to plastics or products is really irrelevant. If you look at the first page it is addressed just towards building products. But if you take the snapshot to the next month of February and you see what we had to do in filing the dismissal motion and then they try to keep us from getting out, never once in any of their briefs that are part of the record do they drop a footnote or say anything to the judge. One, we hope we're not in contempt by disregarding the order, but two, maybe you ought to dismiss Dinosaur Building Products. What they try to do instead is keep us in the case. Back to your question about the stay. The first stay that was moved for was by us. Again, we did not act fast enough. There was an issue that we had evidence in the record that this uncertainty in the marketplace from Dinosaur Building Products because of the fact that we're a defendant in a piece of patent litigation precludes people from buying from us. And there's testimony that was offered in the underlying court to that effect. So it was important that we get this matter done with respect to Dinosaur Building Products. We filed the motion for summary disposition. We immediately filed a motion for stay based upon that. Whenever they came back and wanted to stay, they had to stay conditioned on trying to renegotiate settlement. It's never anything that's just simple with them. It's never just a dismissal. It's never just a stay. There's always a condition attached to it. And that's what I think the Ohio District Court saw. The key issue then is, did they do everything possible in the Sixth Circuit? The question is, did they do everything possible to comply with the order? And they did not. There were a variety of avenues available to them, none of which took place until we were forced to act and incur expense. The big question then becomes plastics. What about plastics? Well, in this order that this court had interpreted, we've discussed that all in a prior appeal. In that order, in Section 2 of the Settlement Agreement, it talks about two things. One, that we had to make design changes to molds. And two, that anybody in the distribution chain can get to sell it without recourse or liability. The issue was brought to Judge Glynn. It's his order, the Ohio District Court. He's the best position to define the full scope. So when they raised the issue via the motion to content by saying, Judge Glynn, this order doesn't apply to plastics, they made the issue and brought it in front of him. So he had to decide. And case law says that the appropriate person to decide the scope of his or her own order is the judge at rendering. And so what he did was he looked at the evidence that was in front of him. Mr. Sadowski said that there was never evidence in front of him regarding plastics. Well, the plastics evidence that is part of the record now was submitted as part of the enforcement motion. So Judge Glynn did know about plastics long before he issued the order. What is the relationship between plastics and dinosaur building products? Dinosaur plastics is the mold manufacturer. So what happens is dinosaur building... What's the corporate relationship? They're sister companies. They're affiliates. They have common ownership and they have three directors, I believe, that are of both companies. So the individuals listed in that deposition are, in fact, stockholders in dinosaur products as well as dinosaur plastics? The one that you forgot, Bob Hendricks, Your Honor, yes. He is the main owner of plastics and he's also the main owner of building products. So he has to interconnect it and that's why he was the person that was the spokesperson for both companies to discuss the manufacturing process. But back to the molds. Dinosaur building products gets these molds. The settlement agreement said make certain changes. Dinosaur building products had those changes made, gave it to its manufacturer, which is dinosaur plastics, made the product. The product goes to dinosaur building products. It assembles it, packages it, and sells it. The settlement agreement, what Judge Glynn was doing was simply effectuating the intent and purpose of that settlement agreement, which said that what TAPCO had indicated that dinosaur building products was, you are going to get an unfettered right to continue to make these custom shutters or standard shutters so long as they are in existence prior to the date of the settlement agreement. And that's exactly what happened here. He did not give us a new benefit. He did not create a new right. What he simply did was take his existing order, his existing settlement agreement, effectuated and made it consistent with his December order, omitting any kind of ambiguity or decreasing any kind of question, which is consistent with courts around the country have done, particularly in the Sixth Circuit. The magistrate judge refers to a case called United States v. Bayshore. And that case is very, very intuitive because what that case does is you had a situation where there was an injunction that said do not dredge. Bayshore didn't dredge, but what they did is they took some concrete out of the water instead. And what the judge said then, what the U.S. government came and said, look, that's really, you're violating the order here. It doesn't specifically say dredging, but you're moving sediment. And so what the district court then said is, you know, I'm going to clarify this order. Dredging is going to say you go and dip under the water at all, you're not going to, you're going to be in violation of my parameters of what I defined you cannot do. And that's really what Judge Gwynne did. Judge Gwynne said stop the Michigan litigation. And now they've raised the issue in Ohio, be it a contemporary, it doesn't apply to plastics. Well, we knew it unequivocally applied to building products. And what if the Michigan action was against dinosaur building products and Shell Oil Company? That would be a different issue, Your Honor. Why is it any different? Just because, I mean, dinosaur building products and dinosaur plastic aren't any different in this, in the sense that they, just because they have common shareholders. If you, let's say if it's Shell and it may be Shell adds in, provides an additive to the plastic that's used for in that kind of scenario. But what you have is an outside company adding an additive that's not in the direct chain of distribution. What you have in this scenario with plastics is the molds, the molds that are actually given are given then to the manufacturer. So let's say- Nonetheless, plastics was not a party to the Ohio litigation. Admittedly, Your Honor. So on what basis does the District Court in Ohio have the authority to hold in contempt and order the discontinuation of litigation as against a non-party? Well, because you focus and take a picture at the, let me give you that. First of all, the contempt was based upon dinosaur building products. The order was expanded to include both released dinosaur building products and released dinosaur plastic. So the order there, the judge has jurisdiction over TACO, is directing TACO to undertake the action because it is the plaintiff- Yeah, undertaking an action against a non-party. A non-party that if you look at the scope of the release and the context of the order is included in the scope and the context of that order. They have been part of the release but not part of the suit. That's correct, Your Honor. We have admitted repeatedly that plastics was not part of the Ohio action. But what we're doing is what a district court can do is take a look at its order and effectuate the full purpose and intent of that order. And what that court is saying is, or what that court did say, was you stop the Michigan litigation. Because the Michigan litigation is premised on a certain type of product that is covered by a release. And so it's not so much that you have five different- And they were both in the chain of distribution. Yes, correct. They were related companies. Correct. Unlike Shell. That's correct. And TAPCO was before the court. That's correct. That's exactly right, Your Honor. What evidence is there in the record to show that Dinosaur Plastics was an agent of Dinosaur Building Products? There is no, other than the testimony about the common ownership, Your Honor, by Mr. Hendricks, there is no in-depth discussion of whether there is an agent or not. Other than, of course, statements by counsel. Aren't you saying then that Plastics is an agent of Dinosaur Building Products and that's how they're covered by the release? We're saying they're covered in two ways. One is because they're in a chain of distribution with regards to the product. They're the mold manufacturer. Not the mold manufacturer, sorry, the parts manufacturer. So first of all, if you look at the intent, they're in that chain of distribution. Were they identified as such at the time of the release? I don't know. At the time the release was signed, in September of 2004, no, Your Honor. But before Judge Quinn issued his order on the scope of the release, they were identified in that because they partly submitted supplemental evidence in front of him, including the deposition of Mr. Hendricks where he talked about Plastics' role with respect to the manufacture of this part. But not as an agent, only as a manufacturer. That's correct. That's correct, Your Honor. But back to your point. So as to this release, it applies to Dinosaur Plastics because it's in the chain of distribution, which is specifically addressed in the settlement agreement. And we made the argument when we filed the motion to Michigan that they're also an agent. Now Judge Quinn asked us a variety of questions, as did Magistrate Lindbergh, the magistrate judge, about what is their role. And counsel on both sides tried to explain that role and what they constitute. But as to, admittedly again, as to actual factual evidence of are they the agent, other than Mr. Hendricks saying that we have common owners, we give some, I believe he also said we give some instructions to them, but nothing beyond those two items, Your Honor. There's no big expose or agency. Is there a written agreement between the two companies? I don't know that, Your Honor. I'm sorry. I'm sorry. I know that the, I can tell you that they are in, they're in separate buildings, but as again, the... I think it's just a question of whether or not there's a written agreement. If you don't know, that's the end of it. I don't know. I'm sorry, Your Honor. Another question that was raised is with respect to the fee bill issue. As this court itself has done in state industries, the court is qualified to define when they look at fee bills in camera whether it's reasonable. Judge Gwynne requires in front of each, in the start of every case for attorneys, and especially in a patent case, to provide an output, provide an identification of the amount of fees they're going to incur. Courts know what's reasonable and what's not reasonable. We identify in letter form and via affidavit what the category of fees encompass, and then because of the privilege issues, gave it to the magistrate limiter in camera. And this wasn't a per se rubber stamping. He looked at the bills, and he even identified that he cut off approximately $5,000. It's improper. So this is not just a situation where you just get it, boom, sign off, as they seem to imply in their briefing. The other issue is with respect to due process that they've made in their briefing. They're simply put is they admitted in front of Judge Gwynne that never at any time did they demand or require an evidence-sharing hearing. Now, mind you, under Rule 43e, this probably was an evidence-sharing hearing because we all submitted affidavits, we all did briefing. And in the context of a contempt motion, that is permissible. Just doing briefing, just doing affidavits, and particularly so when the undisputed evidence shows that they never dismissed the case as Judge Gwynne directed them. This court in the first appeal said that it was an injunction, that it was specific enough and warranted that they cease prosecuting their action. Judge Gwynne further defined it in February, cease prosecuting the action. And yet they opposed a summary disposition brief trying to keep us in. They opposed subsequent efforts in Michigan to try and get the case transferred to Ohio again to bring it to him. Judge Edmonds, for example, in the Michigan District Court, had a moment where she was thinking about transferring everything to Judge Gwynne because she also recognized, and that's part of the record, that he was the person most appropriate to discuss and define the full summary. Who made that motion? We made the motion, I'm sorry, we made the motion to stay. And as part of that, she asked the parties to brief an issue instead of why she shouldn't transfer it to Ohio. So she did that by herself. And then in response to that, they opposed that saying, no, we should all stay here. Again, trying to keep Dinosaur Building Products in that case. Even in response to that query from her, they never footnoted or said anything that said, well, maybe, you know, we keep plastics here, but we ought to take out building products. Never once in that regard. So as my final point, the key query is twofold. One is, did they undertake all reasonable efforts? That's the law in Sixth Circuit, and I believe that the record shows they did not do that. Even if you dispense with plastics with respect to Dinosaur Building Products, they didn't do it. Then as to plastics and summary, the issue there is courts, district courts, are allowed to give full force and effect and effectuate the full intent of their underlying order. That underlying order was fully briefed via the 12-6 order from Judge Wynn, and it was based upon a set of evidence that he took, construed, and then applied, and says that also because of the chain of distribution, because of the unfettered right to use the product, he should be able to, Dinosaur Products and Dinosaur Building Products and Dinosaur Plastics should be able to continue to make that product unfettered. Thank you. Thank you, Mr. Rothenbuecher. Mr. Sadowski has two minutes. Thank you, Your Honor. Your Honor, the decision by Magistrate Judge Lindberg on March 2, 2006, said nothing about any activity of TAP Bill against Dinosaur Building Products. The entire opinion and order focuses on page 8 that the undersigned notes that Judge Wynn did not distinguish between Dinosaur Products and Dinosaur Plastics. Well, the bottom line is that he did, as I quoted. Judge Wynn specifically identified Dinosaur as Dinosaur Building Products. Magistrate Judge Lindberg took that to mean that he didn't distinguish between the two. Well, he didn't have jurisdiction over the other one. He couldn't have addressed Dinosaur Plastic at December 6. He didn't even know about Dinosaur Plastic on December 6. Yet, that is the basis that the finding of contempt is made. There's no issues as to anything we did against Dinosaur Building Products. Nothing's noted. Your point about anyone in the distribution chain, there's a difference between a license and a release. A license would cover anybody in the distribution chain. As we cited in the interdigital case and the cases related to that, there's a difference. A release is very specific to one company, the person named in the release, and other things that are stated in the release. If the release says an agent, then they have to prove that this company is an agent. Clearly, in the Hendricks deposition, he wouldn't say they were related. He wouldn't say they were sister companies. He wouldn't say that they had common ownership. He completely separated the two companies at the time of his deposition.  There's a briefing, about two inches of briefing, in the Detroit case on this issue that the judge in the Detroit case was about to rule on, except Judge Nguyen took the case away from her and dismissed the case. Mr. Siedanski, excuse me. Before you sit down, let me just ask you one question. Assuming we disagree with you in terms of your argument on contempt and we reach the conclusion that we think the district judge was correct in finding contempt, do we nonetheless need to separately address the question of whether plastic should have or should not have been included in that work? That's correct. We do? Yes, those are two separate issues. Have you argued that point? Yes. I know you mentioned it in your conclusion, but I did not see anywhere in your brief that you argued that separately. Maybe I'm misunderstanding the question, but basically we are— I understand you argued that as part of the contempt, that a reason why the contempt was inappropriately issued is because it affected plastic, and it shouldn't because plastic is not a party. But that was all in the context of arguing against the finding of contempt. But if we affirm the district court's finding on contempt, where have you made a separate argument that we nonetheless need to address the question of whether plastic should have been included? My understanding is that there were three issues. One, whether or not we should be forced to dismiss plastic. We're appealing the order that the judge made. One, he ordered us to dismiss plastic from the Detroit suit. We're appealing that as inappropriate because he didn't have jurisdiction, and we laid that out, at least I thought we did. Secondly, we're appealing the sanction because the sanction is based purely on the fact that we pursued dinosaur plastics, as shown on pages 8 and 9 of the magistrate judge's opinion, a report and recommendation which was adopted as a whole by Judge Glynn. And then the third thing we were appealing was the idea that there wasn't, you have no basis, we have no basis, to make any arguments relative to the amount of attorney's fees awarded and whether they were appropriately carved up. Thank you. Thank you, Mr. Sadowski.